Dreher v. Brumgardt.

No. 24,385.

PAULINA DREHER and BENEDICT SCHUMACHER, *Appellants*, v. F. B. BRUMGARDT and ANNA MARIA SCHUMACHER, *Appellees*.

### SYLLABUS BY THE COURT.

1. CONTRACTS—*Parol Contract for Inheritance—Specific Performance Asked—Foundation of Plaintiff's Claim.* In a suit to establish a parol contract for inheritance and for the specific performance thereof, and to impress the equitable title thereby created upon specific real property and for possession of and to partition the property; and to quiet plaintiff's title thereto, the contract is the foundation of plaintiff's right to recover.

2. SAME—*Evidence Failed to Sustain Contract.* The evidence examined, and held, the trial court properly decided that the evidence did not sustain the contract pleaded.

Appeal from Ellis district court; ISAAC T. PURCELL, judge. Opinion filed April 7, 1923. Affirmed.

*J. P. Schutts,* of Hays, *W. W. McCanles, F. M. Kennard, S. L. Trusty,* and *J. A. Kierman,* all of Kansas City, Mo., for the appellants.

*E. A. Rea,* and *E. C. Flood,* both of Hays, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to establish, and specifically perform, a parol contract for inheritance. The court sustained a demurrer to the evidence and rendered judgment for defendants. The plaintiffs appeal and complain of this ruling.

The petition alleged that plaintffs were the owners and entitled to the immediate possession of certain real property, describing it.

" . . . on account of oral agreement entered into by and between said plaintiffs and the defendant Anna Maria Schumacher and Jacob Schumacher, her husband, whereby it was orally agreed by and between said plaintiffs and said defendant Anna Maria Schumacher and her husband, now deceased, that if said plaintiffs would come into the home of said Anna Maria Schumacher and her deceased husband and live and abide with them and render unto them services, love, affection and devotion as natural children would do, that at the death of the said Jacob Schumacher the said plaintiffs should inherit a one-half interest in and to all of the aforesaid described property the same as though they were children of said parties, and at the death of Anna Maria Schumacher they should inherit the other half of said property."

As to the plaintiff Benedict Schumacher it is further alleged that in the year 1901 he was in the New York Foundling Hospital, and

21—113 KAN.

while there Jacob Schumacher and Anna Maria Schumacher came to the hospital and took him to their home near Hays, Kan.; that before taking him from the hospital they entered into an oral agreement with the representatives of the hospital that they would take plaintiff into their home and treat him as one of their children; that they would adopt him as their child and that they would leave to him a child's share of their property, and that at divers times since, Anna Maria Schumacher and Jacob Schumacher orally promised and agreed with him that if he would remain with them, render unto them service, love, affection and devotion, they would treat him as a child and give him a child's share of all their property.

As to the plaintiff Paulina Dreher, it is alleged that when she was six years of age she went to live with Anna Maria Schumacher and Jacob Schumacher as their child; that at the time and at divers times thereafter, Anna Maria Schumacher and Jacob Schumacher orally promised and agreed with plaintiff that if she would live and abide with them, render them love, affection, devotion and service, that after the death of Jacob Schumacher she should receive a child's share of all the property of which he died seized and at the death of Anna Maria Schumacher she should receive a child's share of the one-half interest in and to the balance of the property of which Jacob Schumacher died seized.

The petition further alleged that Jacob Schumacher died, having failed to make any provision for plaintiffs by deed or will; that the defendant Anna Maria Schumacher had conveyed the real property in question, without consideration, to the defendant F. B. Brumgardt; that plaintiffs claim the property by reason of the oral contracts entered into between the parties as specifically set out; that the contracts should be specifically performed, and that plaintiffs should be decreed to be the owners of the property subject to the life estate of Anna Maria Schumacher to one-half interest in the property. The prayer was that the court decree plaintiffs to be the owners of the real property described, subject to a life interest in Anna Maria Schumacher; that the court compel specific performance of the contracts and that the property be partitioned in kind, or if that could not be done without manifest injury, that it be sold and the proceeds distributed; that the defendants be ejected from the property, and that the title to the property be quieted in plaintiffs.

It is clear that the suit is one in equity to establish and to spe-

cifically perform the parol contracts alleged and for all relief that could naturally result from such specific performance. In a suit of this nature, the contract pleaded is necessarily the foundation of plaintiffs' right to any relief. If plaintiffs can establish their contract and show performance of it on their part and that it is equitable that it be enforced or performed, the courts will not hesitate to establish and enforce it. If, on the other hand, the plaintiffs are not able to establish their contract, of necessity their cause of action fails. (*Ayres v. Hull*, 5 Kan. 419; *Greenwell v. Greenwell*, 28 Kan. 675; *Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743; *Nordboe v. Frye*, 107 Kan. 291, 191 Pac. 282; *Alexa v. Alexa*, 108 Kan. 38, 193 Pac. 1083; *Daniels v. Hummel*, 108 Kan. 422, 195 Pac. 604; *Nash v. Harrington*, 110 Kan. 636, 205 Pac. 354.)

As to Benedict Schumacher, instead of the evidence showing that Anna Maria Schumacher and her husband went to the hospital for plaintiff and there agreed with representatives of the hospital that they would adopt plaintiff and leave him a child's share of the property as alleged in the petition, the evidence showed that those in charge of the foundling hospital brought a trainload of children to Kansas, seeking to find homes in which the children might be placed; that several of the children were left in charge of some one at Hays and defendant Anna Maria Schumacher and her husband went there and picked this boy out and took him home. There is no evidence that there was any agreement to adopt or any agreement of any kind respecting property. There is evidence that both Mr. and Mrs. Schumacher spoke of the plaintiffs as their children and that they seemed quite attached to them, and that at different times they spoke about leaving them some property. Jacob Schumacher died in 1909. In 1911 Anna Maria Schumacher conveyed the real property described in the petition to the defendant F. B. Brumgardt by general warranty deed and he has been in possession of it ever since. This plaintiff was sent to school and when he became older was sent to a boys' school at Atchison, Kan., for seven years, all of his expenses being paid by Jacob Schumacher when he was living and after that by the defendant Anna Maria Schumacher. He quit school there of his own accord in 1917, and before his education was completed, though Mrs. Schumacher desired him to stay and was willing to pay his expenses. Since that time he has been to see her once. Naturally it would take clear and satisfactory evidence to convince any court that a boy four years old in a found-

ling hospital, the representatives of which were anxious to have him taken into any home where he would be cared for, would, before he went into such a home, require the parties taking him to agree not only to furnish him a good home, provide well for him, and give him a good education, but that in addition to that, it would be required that they agree to adopt him or to leave him their property at their death. We have no hesitation in saying that the evidence, in so far as it relates to the plaintiff Benedict Schumacher. falls far short of establishing the contract pleaded.

As to the plaintiff Paulina Dreher, the evidence showed that she was born in Ellis county and that her name was Wassinger, and that she had three brothers. Her father died when she was quite young and her mother married again. It seems that the stepfather did not want Paulina. "There were boys at the place and they had no room for her." An uncle took her for a time, and then she was taken to the Schumacher home. That was about 1894, when Paulina was six years old, and she lived with them about fourteen years, until her marriage.. The evidence does not show any contract at all at the time she went there. Her mother testified that after Paulina had been at the Schumacher home for about ten or eleven years she had heard that the Schumachers were having her work too hard and she went down to see about it. "Found she had to work so hard I wanted to get her away. After they said they would treat her all right I left her and did not try to get her away any more. They said they were going to treat her like their own child and give her what was right and give from what belonged to us the same interest as their own child. Talked there about an hour and a half. I said 'all right, keep her,' that is all." There is evidence that the Schumachers sent Paulina to school, spoke of her as their own child and at different times spoke to her about giving her some of their property. When she was married they gave her a hundred dollars, two horses, a cow and a calf, and there was some talk of giving her a particular eighty acres of land, but that part of it was never carried out. Clearly this evidence is insufficient to support the contract pleaded. There was no effort to prove that either of the plaintiffs was to have any specific share of the property at the time of the death of Jacob Schumacher, nor did the evidence disclose that it was known, when either of the children went to the Schumacher place, that Jacob Schumacher would die before his wife. The most that can be said of this contract, in so far as

Paulina is concerned, is that without specific contract the Schumachers contemplated and did treat her as though she were a child, and at times planned to give her some property, and told her of their plans, but this would not be a contract upon which the plaintiff could recover specific real property, for parents may disinherit their children, or may need to use their property for themselves.

The decree of the court quieted the title of the defendant Brumgardt against the plaintiffs, based upon an answer setting out his purchase of the property for a valuable consideration some ten years before the suit was brought, the conveyance of it to him at that time by general warranty deed and his actual and undisputed possession since. The warranty deed showing this conveyance was offered in evidence by plaintiffs. Plaintiffs cannot complain of this portion of the decree, for under the evidence in their behalf they had no specific lien or claim upon the property. The judgment of the court below is affirmed.